Morning, Your Honor. Morning, Mr. Reiner. Your Honor, my name is Stephen Greiner. I represent the appellant Dancap Productions, Inc. As you know, the party ventured into a term sheet in November of 2007 in order to assist Key Brand's efforts to acquire the North American theatrical assets of Live Nations, Inc. Dancap, under the term sheet, which was a binding document, Dancap invested $12.5 million toward that effort, and it was to receive, in addition to stock in Key Brand, rights to manage assets in Canada, which were really critical to Dancap's decision to make its investment and to participate, and those assets included a touring company, Broadway Across Canada, as well as two theaters in Toronto, the Cannon Theater and the Panasonic Theater. The term sheet provided that the parties would negotiate a law form management agreement, which would contain terms that were customary, and the parties attempted to do that. They were unsuccessful prior to the closing of the transaction, and the transaction closed without a law form management agreement. But wasn't the term sheet modified by the additional rights agreement in the meantime? It was modified in certain minor respects by the additional rights agreement, which I'll get to in a minute. Including that any dispute would be arbitrated? Correct. That is exactly correct. Let me ask you a question to start out so I can kind of frame this. Have you ever challenged the arbitration clauses not valid or binding? No, we have not. Has Key Brand ever challenged the idea that your claims were not equitable in nature? No, they have not. So the fact that your claims are equitable in nature and the fact that... It's actually their claims that are equitable. Excuse me, their claims, yes. Their claims are equitable in nature, and as to the fact that whether there was a valid and binding arbitration clause, all parties are in agreement. I believe that is correct. So that makes this arbitration clause squarely at issue. That is correct. And it is a narrow issue. And it's one of interpretation of that arbitration clause. Now, who drafted the arbitration clause? The arbitration clause, we understand, was drafted by Key Brand, although there is, I do not think there's anything in the record on that issue. Because the problem I have with this arbitration clause is it seems inherently ambiguous, because it allows for arbitration of the interpretation of the agreement, but then it excludes injunctive or equitable relief. And to me, if you were trying, the only way to get the interpretation would be through maybe a declaratory relief. So the argument that gets around the exclusion for injunctive or equitable relief is that if the interpretation goes one way, then there's actually a breach. And that would be arbitrable. And if it goes the other way, there's no breach. So which, what drives the interpretation, one way or the other? Well, I think the, what drives the issue here is the way that Key Brand pleaded their petition for arbitration. And if you look at paragraph 12, and the district court found this, what they were seeking was an interpretation of the agreements which we characterized as essentially relief which was declaratory in nature or relief that was equitable in nature. They did not claim any damages. Even though we had raised this issue, they never sought to amend their petition to say they were seeking damages. They framed their petition as one seeking purely equitable relief. I guess I just have really simple-minded view of this. The arbitration agreement agrees to arbitrate interpretation, breach or termination. Actually, it agrees to arbitrate anything arising out of the, any dispute arising out of the agreement, specifically including interpretation, right? Correct. All right. So that's what this was. It was a request to arbitrate a difference between you on how to interpret a particular provision in the agreement, right? Just, I mean, that's correct. That's correct. All right. That being so, they did not ask for an injunction. They didn't ask for restitution. They didn't ask for rescission. They didn't ask for anything equitable. They just did what the agreement allowed them to do, which is say you and I have agreed to arbitrate a difference over interpreting this contract, period. So the arbitrator can do it in the air. It is a court. And even if you were right that it has some kind of component of being a declaratory relief action, had it been filed in court, which it wasn't, it still would be a coercive action, the upside down of which would be breach of contract, which is plainly arbitrable and legal. So I guess I just don't see the problem. Well, first of all, they never claimed it was legal. They never claimed it was legal. But no, but, yeah, I don't, I'm not disputing. Okay. Forget what everybody has claimed or not claimed. I think this thing has gotten way kind of mystical. Okay. Let me, if I could, explain why I think that is not correct, respectfully, Your Honor. If you look at this language, and a lot of, there's another case, the Balandrian case, which we cited, which is quite similar to this from the California State Courts, but it says any dispute, controversy, or claim arising out of or relating to this agreement. And then it has the including language, the including language, and just leaving the parenthetical exceptional language out for the moment, including but not limited to interpretation, breach, or termination. That's a, just a way of specifics of a dispute involving arising out of or relating to the agreement. Just specific types of disputes. And what it really, every agreement, I mean, every dispute involving a breach of contract will involve interpretation. Well, sure. But they don't come in and say, okay, as you did, as I understand it, in Canada, go in and say, I want an injunction which prohibits these rascals from selling the property. Well, they do. I mean, they don't ask for that kind of relief. They just want to know who's right or wrong on interpreting the contract, you or them. But that interpretation of a contract is exactly the same as a declaratory judgment. No. Not to separate them. It's not. If you and I have a done, have a contract, and you're supposed to sell me widgets and you don't, and we have a dispute, I'm going to go in and you're going to, you may disagree with the contract interpretation. That is as legal as it comes. The Chancellor's foot never got involved in contract interpretation in 99 percent of the cases. Now, sure, it could be, it could be in a court action for declaratory relief that it becomes equitable for that reason. But otherwise, it's just a legal thing. And if this, if the underlying, if what underlines this dispute is who's going to be in breach, then everything from the U.S. Supreme Court down has said that it is just squarely, traditionally, a question, a common law question. Well, I would say if this language, the language after the exclusion was not in here, because I don't think it really means very much, then other than claims for injunctive or equitable relief, which is the language here, relief, and they are seeking relief, which is, in our view, an interpretation of this agreement which is exactly the same as saying declare that we are not in breach. Because that's what they say. Declare that we are not in breach and declare that Dan Tapp is in breach of the agreement. That's what Paragraph 12 of the Petition says. And that is equitable relief. I have one more question and then I'll shut up. What's the status of the management rights issue? The issue was after the judge, Judge Matz's decision, the matter went to arbitration. The matter was, has been arbitrated. The arbitration, there was a hearing and it is still going on. Well, okay. I didn't ask my question very well. Was the right to manage the theaters terminated? Yes, it was. Then why isn't a declaration, as it were, moot? There's been a termination. So now the issue, was the termination a breach or wasn't it? Well, they asked, well, I don't. I mean, I'm asking you. What do you think about that? Well, I think, I don't. Well, the issue is, the issue may well have been moot, but then there was no dispute. Well, that's exactly my point. There was no dispute in the first place. If there has been a termination, then why isn't the declaration moot, making it purely, purely and undisputably a legal issue? In other words, there's now either been a breach or there hasn't been a breach. It's not somebody coming in saying, I wish to be told in advance of doing something that, that I can do it without risk. I can only tell you the way they framed their, their petition and the way we litigated it below is, I don't know if they thought it was terminated or not terminated. I think now there isn't any question that it is terminated. But they seek, and that's the only thing they seek, and that's what this record has in it, is an interpretation of the agreements. That's, that's all they sought. That they didn't breach and that we did breach. That's what they wanted, which is exactly the same as a, in our view, as a declaratory judgment. So this one other, I'm sorry, I'm sorry. Go ahead. Well, okay. This other, one other thing that's kind of bothering me about this arbitration clause is that it states that any dispute, da, da, da, da, shall be arbitrated including whether the claims asserted are arbitrable. So shouldn't the arbitrator have decided the question? Why are, you know, why did this go, did you have to go to dispute? They never, they never raised, they never raised that issue. Kebran never said that the issue of arbitration should be decided merely by the arbitrator. They, the way they phrased it, they wanted the district court judge to determine whether it was arbitrable or not. And you, so you're suggesting that their argument that they have made is not the same argument that the arbit, whether the agreement is arbitratable or not is, in fact, something the arbitrator ought to have decided? They did not, they did not argue that. What they, what they argued was the district court should decide that issue. It was absolutely never a. What did you decide? What did you argue? We argued that it also, it ought to be decided by the district court and the district court ought to decide it's not arbitrable because of the fact that they were seeking only equitable relief. That's exactly what we argued below and we've argued it here. Do you believe that this agreement says that the district court determines whether this is an arbitratable dispute? Well, I think they have to, I mean, I think the district court has a role in that and the district court can. Well, what role? The district court. Under the contract, what role? It seems to me it's perfectly obvious. There's only one soul that can determine whether the agreement is arbitrable. It's not the district court. Well, I think that would be, it would be very unfair to us at this point to, to impose that on us because we did not, because of the way it was raised by Kebran, that's not, while we preserved the issue before the arbitrator, the district court had decided the issue and I don't think the arbitrator, there was any chance the arbitrator was going to decide it contrary to the district court. You're suggesting Kebran waived that part of the contract? Pardon? You're suggesting by coming to the district court, Kebran waived that right? They certainly did. If that's the, if your Honor's saying that that's the proper interpretation, they certainly did. That's what I wanted to know. Thank you. Thank you. I'd like to observe for the time I have. Certainly. Mr. Gibson. Good morning. May it please the Court. I am Stan Gibson representing Kebran Entertainment, the appellee. The district court should be affirmed for two independent reasons. The first reason is that this is a breach of contract action and that a breach of contract action plainly falls within the arbitration clause here. The second reason, as was touched upon during the previous argument, was, is that this issue involves interpretation, which is specifically listed as one of the issues that can be arbitrated in the arbitration. Turning to the first point, which the argument really is that if, in fact, you are really bringing an equitable claim, all of these questions that you now seem to be sitting upon have to go to the judge. Well, we are, in fact, not bringing an equitable claim. And I think, well, my understanding was that you do and you have always asserted that you were, your claims were equitable in nature. That's not correct, Your Honor. Let me, let me put this into perspective because we file a petition with the district court. In the meantime, DanCAP files a lawsuit in Canada seeking not only injunction but also damages for breach of contract. We then amend our petition to say that those claims that DanCAP is bringing against us need to be arbitrated. And those are damaged claims for breach of contract. And the district court, and particularly if we look at the district court's ruling on DanCAP's motion to reconsider, specifically says he is ordering DanCAP to arbitrate its breach of contract claims against us for damages. Now, the other side of those claims is our request, which are also in the nature of legal claims, that we are not in breach and that DanCAP is in breach. That's what we ask for an arbitration of. And the district court says, yes, those are issues that should be arbitrated. DanCAP has damaged claims for breach of contract. We should go to arbitration. We are saying that we want an interpretation that says we're not in breach of contract. Those are legal claims that should be subject to arbitration. And I think that's an argument that DanCAP has just ignored on this appeal. It's not in their brief on appeal. They briefly addressed it in the reply after we raised it in our response brief. But it is really the crux of this is we don't need to get in even to this interpretation and equitable issue because the fact is DanCAP was seeking a damage claim for breach of contract against us in Canada, and the district court said they have to go to arbitration. And that's on page 4 of the record here, which is the district court's decision on the reconsideration. It makes it very clear he's ordering DanCAP to arbitrate all of its claims against Keybrand other than the non-breach of contract claims, i.e. the injunction, or claims that DanCAP has brought against other parties. So as we look at that, that's clearly what needs to go to arbitration. And then we have claims against them saying we're not in breach and that they are in breach. Now, of course, as was asked of appellant's counsel, the arbitration has proceeded. The arbitration went forward in November. There's been an interim ruling. In the arbitration, we did, in fact, assert claims for breach of contract against DanCAP. We did seek damages. DanCAP asserted its claims against us for breach of contract, and they sought damages. There was an interim ruling in December, which found that neither side was liable to the other and did not award any damages. DanCAP has since moved to reconsider that, and we're waiting for a decision on that motion to reconsider. But there has been an arbitration where we have gone forward, and it's all been legal issues. And I think the odd part of this kind of a case is that really when these issues should be addressed is when the arbitration award is final, we can look at it, and it can come up either on a petition to confirm the arbitration award, on a motion to vacate the arbitration award. Did the arbitrator exceed his authority and rule on equitable issues? We don't believe so. We think everything's been contract issues. But that's really a more clear record to look at this. I think this is more similar to the Comedy Central case, where they really look at the award after it's been issued. In that case, the arbitrator issued some claims for injunctive relief, and I think it was reversed on that. Here we're not asking for any kind of injunctive relief. That's not in our petition. So when you look at the procedure of this case, we were seeking arbitration of DanCAP's claims against us for breach of contract. We also wanted an arbitration award that would reflect that we were not in breach, which is the interpretation issue. So you had to go to the district court because they had already filed the breach of contract against you to petition for the arbitration. Well, initially we initiated legal action because we were concerned they were going to sue us in Canada. So we filed an initial petition in district court. They then did sue in Canada for a number of different claims, including breach of contract for damages. We amended our petition and set it for hearing, and then the district court granted our amended petition to compel them to arbitrate because they were not willing to arbitrate. So have you had the arbitration proceedings? We had the arbitration proceedings this past November. We agreed to bifurcate the phases into liability and damages, so there was an interim award on the liability phases. And both parties brought claims against one another for breach of contract and for damages as a result of that. So given that you've had the arbitration, is this moot, this whole issue that's in front of us? Yeah, I believe that it is essentially moot because really what has gone on in the arbitration is what needs to be looked at, not what the record was before the arbitration at the time or before the petition was filed or when the petition was filed, because at that point the theaters had not been sold. The theaters were since sold because the Canadian court denied their request for injunction. So there's no question that I agree with Appellant's counsel that any management rights have been terminated. So we are just dealing with a breach of contract situation. Now, I do understand from Appellant's standpoint that there's a dismissal, there's a final order. If they don't file an appeal, they can be argued to have waived their right to an appeal. That, again, in the Comedy Central case was what happened, although I think the court looked at everything in that case and understood that on a motion to vacate, you could consider the same issue. So in this situation where we've had the arbitration, the more appropriate time to look at this is going to be once there's a final award. At that point, if Gancat feels that the arbitrator exceeded his authority and somehow ruled on claims that were not subject to arbitration, that were equitable or were injunctive, I think that is the appropriate time to raise it. I understand. And so with that, I think that there are two main grounds for affirming the district court. This is a breach of contract action. Gancat had breach of contract claims against Keybrand that were seeking damages plainly subject to the arbitration provision. Our claims, really the reverse of their claims, seeking an interpretation that we were not in breach are also legal. They specifically fall within the guidelines of the arbitration provision, saying that we can seek arbitration or claims, all claims arising out of an interpretation of the agreement will be arbitrable. For either of those reasons, I think the district court should be affirmed. I have no questions. All right. Thank you, Mr. Gibson. Thank you. Mr. Greiner. Just two points. Firstly, this is not moved at all from the motion. I think I understand why you didn't have to address that. And they did file it. The pleading that they filed, they filed two days after they announced they sold the theaters. We did sue them in Canada a month later, but the petition that is here before the court and was subject to the arbitration decision is one that they filed first. No, they amended it. They amended it. So that was the subject of the district court's order. But they didn't change it. They didn't change it in any such way. I understand. But I just technically, the amended petition is what the district court looked to. And I think it did go out in it because I think they did request that everything in the Canadian lawsuit be arbitrated, and the district court rejected that. That is true. That is true. The only other point I want to make, which we do brief, is this language on which the district court relied, which was after the exception, if you accept the district court's reasoning, it basically means that there is no exception at all for equitable relief claims because every contract dispute would involve the interpretation, the breach, or the termination of an agreement. And I would also ask the Court to look at the Blandrian case, which I think in terms of contract interpretation of an arbitration clause is quite similar to this. Thank you. Okay. Thank you, Mr. Kreiner. Ms. Gibson, the matter just argued will be submitted.
judges: Rymer, Wardlaw, Smith N. R.